**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**JENNIFER HARSH,**

                      **Plaintiff,**                  3:13-cv-42
                                                          (GLS)

                         v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social
Security,

                      **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Lachman, Gorton Law Firm | PETER A. GORTON, ESQ. |
| P.O. Box 89 | |
| 1500 East Main Street | |
| Endicott, NY 13761-0089 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | VERNON NORWOOD |
| United States Attorney | Special Assistant U.S. Attorney |
| 100 South Clinton Street | |
| Syracuse, NY 13261 | |
| | |
| Steven P. Conte | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe
Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Jennifer Harsh[1] challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. § 405(g) and 1383(c)(3). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Harsh's arguments, the Commissioner's decision is reversed and remanded.

## II. Background

On March 11, 2010, Harsh filed applications for DIB and SSI under the Social Security Act ("the Act"), alleging disability since October 10, 2008. (Tr.[2] at 47-48, 114-22.) After her applications were denied, (*id.* at 50-61), Harsh requested a hearing before an Administrative Law Judge (ALJ), which was held on June 3, 2011, (*id.* at 20-45, 62). On August 16, 2011, the ALJ issued an unfavorable decision denying the requested

---

[1] Plaintiff's brief refers to plaintiff by her given name, "Jennifer." (*See generally* Dkt. No. 13.) The court, in keeping with its ordinary practice, will refer to plaintiff by her surname, "Harsh." Counsel is reminded that, as a basic principle of courtroom decorum, when appearing in this court, all persons should be referred to by their surnames and not by their first or given names.

[2] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 8.)

benefits which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*Id.* at 1-19.)

Harsh commenced the present action by filing her complaint on January 11, 2013 wherein she sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 7, 8.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 13, 14.)

### III. **Contentions**

Harsh contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 13 at 11-25.) Specifically, Harsh claims that the ALJ erred in: (1) determining that her impairments did not meet or equal a listed impairment; (2) assessing the opinion evidence of record; and (3) rendering his residual functional capacity (RFC) determination. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence. (Dkt. No. 14 at 10-16.)

### IV. **Facts**

The court adopts the parties' undisputed factual recitations. (Dkt. No.

3

13 at 2-11; Dkt. No. 14 at 2-6.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[3] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Weighing Opinion Evidence

Among other arguments, Harsh contends that, because they are consistent with the opinions of consulting examiners Robert Russell and Mary Ann Moore and treating licensed social worker Andrea Barbis, the ALJ committed reversible error by affording the opinions of treating physician Matthew Noble only "little weight." (Dkt. No. 13 at 11-14; Tr. at 13.) The court agrees.

---

[3] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims. As review under both sections is identical, parallel citations to the regulations governing SSI are omitted.

4

Controlling weight will be given to a treating source's opinion on the nature and severity of a claimant's impairments where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). When a treating source's opinion is given less than controlling weight, the ALJ is required to consider the following factors: the length, nature and extent of the treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See* 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ must provide "good reasons for the weight given to the treating source's opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (internal quotation marks and citations omitted). "Nevertheless, where the evidence of record permits [the court] to glean the rationale of an ALJ's decision," it is not necessary that the ALJ "have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Id*. (internal quotation marks and citation omitted).

Here, the record contains several opinions of Dr. Noble regarding

5

Harsh's ability to perform the mental demands of work. (Tr. at 216, 318-19, 321-22, 353-55.) In September 2009, Dr. Noble indicated that Harsh was diagnosed with obsessive-compulsive disorder (OCD) and post-traumatic stress disorder (PTSD), and opined that she was not capable of any work activity for three months. (*Id.* at 322.) In December 2009, Dr. Noble again indicated that Harsh was incapable of work activity for three months. (*Id.* at 321.) Thereafter, in April 2010, Dr. Noble reported that Harsh was capable of working part-time provided it was in an environment that was "lenient and tolerant because her mood changes rapidly and she is very emotional." (*Id.* at 319.) In June 2010, Dr. Noble wrote a note excusing Harsh from work for three months, opining that she could work with certain limitations, "including help when she cannot work, limited hours, and scheduled time off." (*Id.* at 216.) Subsequently, in January 2011, Dr. Noble again opined that Harsh could work part-time in a "very understanding environment that can deal with her depression and obsessions" and provides her extra time to complete tasks. (*Id.* at 318.) Finally, in May 2011, Dr. Noble completed a mental health questionnaire for Harsh and opined that she suffered marked limitations in her ability to sustain a routine, accept instructions and criticism from supervisors, and respond to stressors and changes in the

6

work setting.  (*Id.* at 353-55.)  Further, Dr. Noble reported that Harsh's ability to complete a normal workday and workweek and perform at a consistent pace was extremely limited and Harsh would likely miss more than three days of work per month.  (*Id.* at 353-54.)

Harsh points out that the opinions of every examining source of record support Dr. Noble's opinion that Harsh is significantly limited in her ability to handle stress, work at a consistent pace, and deal with supervisors.  (Dkt. No. 13 at 12-13.)  Specifically, in March 2009, Harsh was evaluated by Dr. Russell.  (Tr. at 311-17.)  Dr. Russell concluded that paranoia and hostility would likely sabotage Harsh's good relations with coworkers and supervisors, poor emotional regulation would likely cause her problems, and anxiety and OCD symptoms might disrupt her job performance.  (*Id.* at 314.)  Dr. Russell assigned Harsh a Global Assessment of Functioning (GAF) score of 45, indicating serious symptoms,[4] and opined that it was unlikely that Harsh could secure and

---

[4] The GAF Scale "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  *Pollard v. Halter*, 377 F.3d 183, 186 n.1 (2d Cir. 2004).  A score in the range of forty-one to fifty indicates "'[s]erious symptoms (*e.g.,* suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (*e.g.,* no friends, unable to keep a job).'"  *Zabala v. Astrue*, 595 F. 3d. 402, 406 n.2 (2d Cir. 2010) (quoting Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., Text Rev. 2000)).

7

sustain employment. (*Id.* at 317.) In August 2010, consulting examiner Moore reported that Harsh was capable of following simple directions and performing simple and rote tasks. (*Id.* at 281-85.) However, according to Dr. Moore, Harsh had difficulty dealing with stress and suffered depression and anxiety that might limit her ability to relate adequately with others, make appropriate decisions, and maintain a regular schedule. (*Id.* at 284.) Dr. Moore concluded that Harsh's psychiatric issues might "significantly interfere with [her] ability to function on a daily basis." (*Id.*) Finally, licensed social worker Barbis completed a mental health questionnaire for Harsh and opined that she suffered marked restrictions in her ability to maintain attention and concentration, complete a normal workday and workweek and perform at a consistent pace, accept instructions and criticism from supervisors, and respond to stressors and changes in the work setting. (*Id.* at 356-58.) Barbis also indicated that Harsh would likely be absent from work more than three days per month. (*Id.* at 357.)

The ALJ discounted each of these opinions and, instead, relied on the opinion of non-examining psychological consultant R. Altmansberger who reviewed the medical evidence of record, in August 2010, and concluded that Harsh was capable of managing the changes and stressors

8

"of a low level workplace," interacting with others in such an environment, understanding simple job instructions, and making simple work-related decisions. (*Id.* at 13-14, 300-02.) The ALJ gave "significant weight" to this opinion because Altmansberger is "familiar with agency rules regarding disability and is a specialist in the field of psychiatry." (*Id.* at 13.) Inexplicably, however, the ALJ discounted the opinions of Drs. Moore and Russell who are both specialists in psychiatry, in part, because they were one-time examiners. (*Id.* at 13-14.) At odds with the ALJ's determination are the regulations that provide that the ALJ must "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." 20 C.F.R. § 404.1527(c)(1). In addition, the ALJ discounted Dr. Moore's opinion because she "does not possess the same programmatical knowledge as" Altmansberger. (Tr. at 13-14.) The ALJ provides no basis for this distinction and it is well settled that "an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." *O'Hora v. Comm'r of Soc. Sec.*, No. 5:12-CV-52, 2014 WL 1312142, at *11 (N.D.N.Y. Mar. 31, 2014); *see* 20

9

C.F.R. § 404.1527(e)(2)(i).

The ALJ provided the following reasons for discounting the opinion of Dr. Noble: (1) he is not a specialist in the field of psychiatry; (2) his opinions are inconsistent with Harsh's "wide range of daily activities;" (3) his opinions are inconsistent with each other because, at times, Dr. Noble opined that Harsh was capable of working with limitations, but, in May 2011, he opined that Harsh suffers extreme limitations in completing a normal workday; and (4) Dr. Noble indicated that, to improve her condition, Harsh needs to take her medication as prescribed, follow-up with Dr. Noble monthly, and go to counseling. (Tr. at 13, 318-22, 353.)

First, the court notes that, although Dr. Noble is not a psychiatrist, he did treat Harsh for OCD and PTSD. (*Id.* at 226-33, 234-41, 245-52, 259-62, 270-73, 354-55.) On several occasions throughout the record, Dr. Noble's mental status examinations of Harsh revealed, among other things, an anxious affect, compulsive behaviors, obsessive thoughts, paranoia, and poor insight and judgment. (*Id.* at 219, 228, 251, 330.) Turning to the consistency of Dr. Noble's opinions, the ALJ notes that, on several occasions Dr. Noble opined that Harsh was capable of working part-time, with limitations accounting for her depression and obsessions, including

extra time to complete tasks. (*Id.* at 13, 216, 318-19.) These opinions are seemingly consistent with Dr. Noble's later opinion, on a May 2011 mental health questionnaire, that Harsh suffers extreme limitations in her ability to complete a normal workday and workweek—defined as eight hours a day and five days a week—and to perform at a consistent pace without an unreasonable number and length of rest periods. (*Id.* at 353.) Nevertheless, if the ALJ felt there was an incongruity between Dr. Noble's opinions, he should have re-contacted the treating physician, as his May 2011 mental health questionnaire appears to be consistent with the record as a whole, including the medical opinions of the remaining treating and examining sources. *See* 20 C.F.R. § 404.1512(e) (requiring re-contact when there is a conflict, ambiguity, incompleteness, or deviation from medically acceptable techniques);[5] *c.f. Micheli v. Astrue*, 501 F. App'x 26, 29-30 (2d Cir. 2012) (explaining that the ALJ was not required to re-contact the treating physician where the record was adequate to determine

---

[5] Effective March 26, 2012, the Commissioner amended 20 C.F.R. § 404.1512 to remove former paragraph (e) and the duty it imposed on ALJs to re-contact a disability claimant's treating physician under certain circumstances. *See* How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651, 10,656 (Feb. 23, 2012) (to be codified at 20 C.F.R. § 404.1512) (deleting former paragraph (e) and redesignating former paragraph (f) as paragraph (e)). Here, the court applies and references the version of § 404.1512(e) in effect when the ALJ adjudicated Harsh's claims.

11

whether claimant is disabled).

Lastly, the court concludes that the ALJ placed undue emphasis on Harsh's ability to perform a "wide range of daily activities," including doing some cooking, cleaning, laundry, and shopping, sitting on her porch, reading, and caring for her kids. (Tr. at 13, 43-44, 284.) Under the circumstances and given the medical opinions of record, it was error for the ALJ to infer an ability to handle the stress demands of competitive, remunerative employment on a sustained basis from the ability to perform very basic activities of daily living. *See George v. Colvin*, No. 7:12-CV-1610, 2014 WL 652930, at *6 (N.D.N.Y. Feb. 19, 2014); *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer."). The ALJ referred to the fact that Harsh worked after the incident that allegedly precipitated her PTSD. (Tr. at 13.) However, Harsh's testimony and reports to her treating providers indicate that she was fired from such employment due to mental health symptoms. (*Id.* at 35, 265.) Further, the ALJ noted Dr. Noble's

12

suggestion that Harsh would improve if she was compliant with her medications and counseling, but Harsh told her treating physician that she misses appointments because she is afraid to leave home and that she "is afraid to take her [medications] because she thinks this will make her worry less and then someone will . . . hurt her or her family." (*Id.* at 13, 251, 318-22.) The ALJ does not appear to have considered these explanations when discounting Dr. Noble's opinion. (*Id.* at 13.)

Based on the foregoing, the court remands this case to the Commissioner for proper consideration of the medical opinions of record, and, consistent with his duty to develop the record, the ALJ should seek clarification regarding Harsh's functional capabilities, if necessary to make a determination.

**B.** **Remaining Findings and Conclusions**

Because Harsh's remaining contentions may be impacted by the subsequent proceedings directed by this Order, it would be premature of the court to address them at this juncture.[6]

---

[6] The Commissioner argues that, regardless of the weight given to Dr. Noble's opinion, Harsh's contention that she meets listings 12.04 and/or 12.06 are meritless because "none of [Harsh's] treating sources assessed marked limitations in at least two of the 'B' criteria." (Dkt. No. 14 at 12.) At the third step of the disability evaluation, the ALJ is required to determine whether the claimant's impairment(s) meet or equal an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. *See* 20 C.F.R. § 404.1520(d). To establish disability under listings 12.04 and

13

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Memorandum-Decision and Order; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

August 21, 2014
Albany, New York

*/s/ Gary L. Sharpe*
Gary L. Sharpe
Chief Judge
U.S. District Court

---

12.06 a claimant must prove, among other things, that she suffers "at least two of the following: 1. [m]arked restriction of activities of daily living; or 2. [m]arked difficulties in maintaining social functioning; or 3. [m]arked difficulties in maintaining concentration, persistence, or pace; or 4. [r]epeated episodes of decompensation, each of extended duration." 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 12.04(B), 12.06(B). As Dr. Noble's May 2011 mental health questionnaire indicated that Harsh suffered marked limitations in the areas of concentration and persistence as well as interaction with others, the ALJ's analysis of Dr. Noble's opinion necessarily affected the ALJ's determination at step three. (Tr. at 353-54.)

14